UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-754** |
| **N. BURL CAIN, WARDEN** | **SECTION: "E"(5)** |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE** as untimely.

### *Procedural history*

Petitioner, Michael Williams, is a state prisoner incarcerated in the Louisiana State Penitentiary in Angola, Louisiana. On March 24, 1994, Williams was charged by grand jury indictment with aggravated rape and aggravated crime against nature in violation of Louisiana Revised Statutes 14:42 and 14:89.1.[1] On November 9, 1995, following a two-day jury trial, he

---

[1] State Rec., Vol. 1 of 3, Bill of Indictment. Williams was charged along with two co-defendants (Gerald LeBoeuf and Louis Alexander) in the same indictment.

was found guilty as charged.[2] On February 29, 1996, he was sentenced to a term of life imprisonment on the aggravated rape conviction and ten years imprisonment as a third-felony offender on the aggravated crime against nature conviction. It was ordered that the sentences be served concurrently and without benefit of parole, probation or suspension of sentence.[3]

The Louisiana Fourth Circuit Court of Appeal affirmed his convictions and sentences on December 18, 1996.[4] Williams filed an untimely writ to the Louisiana Supreme Court on February 26, 1997.[5] His writ application to the Louisiana Supreme Court was denied on November 14, 1997.[6] He did not seek review to the United States Supreme Court.

On or about August 12, 2009, more than ten years later, Williams submitted a *pro se* application for post–conviction relief and request for an evidentiary hearing to the state district court.[7] The district court denied relief on March 18, 2011.[8] His related writ application

---

[2] State Rec., Vol. 1 of 3, Trial transcript of November 9, 1995, p. 294; *see also* minute entry dated November 9, 1995 and Jury Verdict forms.

[3] State Rec., Vol. 1 of 3, Minute entry dated February 29, 1996.

[4] *State v. Williams*, 96-KA-1144 (La. App. 4th Cir. Dec. 18, 1996) (unpublished); State Rec., Vol. 2 of 3.

[5] State Rec., Vol. 2 of 3, Motion for leave to file out-of-time writ of certiorari-supervisory writs and accompanying petition (97-KH-0548), postmarked February 26, 1997.

[6] *State v. Williams*, 703 So.2d 1285 (La. 1997) (97-KH-0548); State Rec., Vol. 2 of 3.

[7] State Rec., Vol. 2 of 3, Motion for evidentiary hearing and memorandum in support of successive application for post-conviction relief stamped as filed on August 12, 2009. As noted by the State in its response, despite the styled reference "successive," the record does not reflect any previous post-conviction relief application ever filed by Williams. Federal *habeas*

2

to the Louisiana Fourth Circuit Court of Appeal was denied on September 23, 2011.[9] His subsequent request for supervisory writ of review to the Louisiana Supreme Court was denied on March 23, 2012.[10]

On March 24, 2014, Williams filed his federal application for *habeas corpus* relief.[11] He contends the prosecution failed to disclose information favorable to the defense and knowingly permitted the victim to testify falsely. The State argues that his application should be dismissed as untimely.

---

courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006). That date cannot be gleaned from the state court record and the application is not dated. The Court therefore considers the file-stamp placed on the document by the clerk of court.

[8] State Rec., Vol. 3 of 3, Transcript of evidentiary hearing held March 18, 2011, pp. 5-6.

[9] *State v. Williams*, 2011-K-0605 (La. App. 4th Cir. Sep. 23, 2011) (unpublished writ ruling); State Rec., Vol. 3 of 3.

[10] *State ex rel. Williams v. State*, 85 So.3d 88 (La. 2012) (2011-KP-2181); State Rec., Vol. 3 of 3.

[11] Rec. Doc. No. 1, Petition. "A prisoner's *habeas* application is considered 'filed' when delivered to the prison authorities for mailing to the district court." *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Williams signed his petition on March 24, 2014, which is presumed to be the earliest date on which it could have been delivered to prison authorities for mailing.

3

*Discussion*

**A. *One-year statute of limitations***

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, governs the filing date for this action because Williams filed his *habeas* petition after the AEDPA's effective date. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA includes a one-year period of limitations for *habeas* petitions brought by prisoners challenging state-court judgments. Title 28 U.S.C. § 2244(d) provides, in pertinent part:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The state argues that Williams' petition is time-barred pursuant to Subsection (A), which requires that a petitioner bring his Section 2254 claims within one (1) year of the date

on which his underlying criminal judgment becomes "final."  As to finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir.2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." *Id*. at 694; *see also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir.2004) ( Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. *See Foreman*, 383 F.3d at 338–39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir.2006); *Roberts*, 319 F.3d at 693.

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir.2008) (emphasis added).

In this case, the Louisiana Fourth Circuit Court of Appeal affirmed Williams' conviction and sentence on December 18, 1996.  Under Louisiana law, he then had 30 days to file a writ application with the Louisiana Supreme Court to challenge that judgment. Louisiana Supreme Court Rule X, § 5(a).  Because he filed no such application within that deadline, his state criminal judgment became final for purposes of the AEDPA, and his federal limitations period commenced, on January 17, 1997.  *See Butler*, 533 F.3d at 317-18.  The federal limitations

5

period expired one year later on January 20, 1998, unless that federal deadline was extended through tolling.[12]

The AEDPA itself provides for interruption of the one-year limitations period. Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). However, in Williams' case, the AEDPA one-year statute of limitations period ran without interruption for one year, until January 20, 1998, when it expired. Williams had no properly filed state-court application for post-conviction relief or other collateral review pending in any of the state courts during that period.[13] His first application for post-conviction

---

[12] In 1998, January 17th fell on a Saturday. The State notes that Williams had until the following Monday, January 19th to file his writ application. However, he actually had until January 20th because the 19th was a federal holiday, Martin Luther King Day. *See* Fed.R.Civ.P. 6(a); *Flanagan v. Johnson*, 154 F.3d 196, 200-01 (5th Cir.1998) (applying Rule 6(a)).

[13] The untimely writ application to the Louisiana Supreme Court in 1997 did not impact the federal limitations calculation. *Butler*, 533 F.3d at 317, 319. The United States Fifth Circuit Court of Appeals has expressly held that a petitioner is not entitled to any tolling credit under § 2244(d)(2) for an untimely direct-review filing. As the Fifth Circuit explained, "[u]nder that provision it is only state *post-conviction relief proceedings* that cause tolling." *Butler*, 533 F.3d at 318 (emphasis added). Because petitioner's untimely writ application was filed as part of the *direct review proceedings*, § 2244(d)(2) is simply inapplicable. *Allen v. Tanner*, Civ. Action Nos. 11–927 and 11–1601, 2011 WL 4344586, at *2 (E.D.La. Aug. 19, 2011), *adopted*, 2011 WL 4345081 (E.D.La. Sept. 15, 2011). Therefore, Williams is not entitled to statutory tolling under §2244(d)(2) for the untimely Louisiana Supreme Court writ application. The Court also notes that even if tolling applied for the period of time during which his Louisiana Supreme Court writ application was pending, the instant federal petition nonetheless would still be untimely.

6

relief was not submitted to the state district court for filing until August 12, 2009. This application, filed well more than one year after expiration of the AEDPA one-year statute of limitations, provided no tolling benefit under the statute. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir.2000). Williams is not entitled to the benefit of statutory tolling.

As the State points out, Williams' allegations implicate 28 U.S.C. § 2244(d)(1)(D). Under that subsection, the commencement of the federal limitations period is delayed if a petitioner's claim is based on a factual predicate that could not have been discovered earlier through the exercise of due diligence. The one-year limitations period begins to accrue "when the factual predicate could have been discovered through the exercise of due diligence," not when it was actually discovered by a petitioner. 28 U.S.C. § 2244 (d)(1)(D); *see Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). The United States Fifth Circuit has held "that this means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, No. 14-51288, 2015 WL 3649765, at *9 (5th Cir. June 8, 2015), citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998); *see also Hunter v. Cain*, No. 11-30978, 478 F. App'x 852 (5th Cir. June 13, 2012), citing *Starns v. Andrews*, 524 F.3d 612, 620–21 & n. 5 (5th Cir.2008) (holding that the relevant date under § 2244(d)(1)(D) is the date that the *habeas* petitioner or his criminal attorney received the information in question).

Williams contends the factual basis for his claims was unknown to him until he received and reviewed the District Attorney's file in May 2009. Williams asserts that the file contained

7

undisclosed material evidence (referred to by Williams as a "dossier of psychiatric consultation reports"), pertaining to the victim's childhood mental and emotional problems, which he claims "calls into question both the reliability and credibility of the state's star witness, [the victim]."[14] He argues that the victim's psychiatric records should have been disclosed because the reports could have been used to exculpate Williams by discrediting the veracity and trustworthiness of the victim's testimony regarding the sexual assault.

Apart from Williams' conclusory assertions, there is nothing in the state-court record to establish that the psychiatric reports contained in the District Attorney's file were not disclosed to defense counsel or that he was otherwise unaware of their existence.[15] Nor has Williams established reasonable diligence in discovering the factual predicate underlying his claims. Williams admits the information was contained within the District Attorney's file. He does not offer an explanation for his inordinate delay in making a public records request for the file. *See Freeman v. Zavaras*, 467 F. App'x 770, 775 (10th Cir.2012) (refusing to apply subparagraph (D) where petitioner failed to explain why he could not have discovered the

---

[14] Rec. Doc. No. 1, Memorandum in Support, p. 7.

[15] Indeed it appears defense counsel was on notice that the victim had psychiatric problems and received treatment by a psychiatrist. The medical report prepared by Dr. Klauer in connection with his examination of the victim at Charity Hospital following the incident documented the victim's medical history. In that report, as testified to by Dr. Klauer, the victim had a history of medical problems, seizure disorder and personality or mood disorder for which he was taking medications prescribed by a psychiatrist. State Rec., Vol. 1 of 3, Trial transcript, pp. 96-98. Furthermore, defense counsel appeared to be aware that the medical records contained information that was not brought out at trial. *Id.* at 211.

alleged *Brady* materials earlier).[16] Furthermore, as Williams concedes, even after he discovered the psychiatric reports that provided the factual basis for his claims, he still failed to pursue timely federal *habeas* relief. He admits he discovered the facts providing the factual predicate for his *habeas* claims when he received the District Attorney's file on May 7, 2009. He then allowed 96 days to run until he filed his application for post-conviction relief in the state district court on August 12, 2009. The state district court denied relief on March 18, 2011. He filed a writ application with the Louisiana Fourth Circuit on May 5, 2011. The court of appeal denied relief on September 23, 2011. He applied to the Louisiana Supreme Court for supervisory writs on October 6, 2011. The Louisiana Supreme Court denied relief on March 23, 2012. Even if the limitations period remained tolled during the post-conviction proceedings, at this point the federal limitations period began to run again. He had only 269 days remaining within which to file his federal application for relief. However, Williams acknowledges that he then waited another two years, until March 24, 2014, to file his federal application in this Court. Thus, even if subsection D were applicable, his petition is untimely.

## B. *Equitable tolling*

The one-year limitations period may also be equitably tolled in rare and exceptional

---

[16] In fact, he could have obtained the file years earlier. The records of public bodies concerning criminal litigation are available under the Public Records Act as soon as a conviction is final. *See* La. R.S. 44:3 (A)(1); *Lemmon v. Connick*, 590 So.2d 574 (La.1991); *see also Johnson v. Cain*, Civ. Action No. 12-974, 2013 WL 5961101, at *5 n. 20 (E.D. La. Nov. 7, 2013).

circumstances where a petitioner can establish that he diligently pursued his rights and that an extraordinary circumstance hampered his ability to file his petition within the one-year federal limitations period. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). A petitioner bears the burden of proof to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Williams does not set forth any basis for equitable tolling. In fact, he appears to concede his lack of diligence.[17] He offers no excuse for his failure to pursue timely *habeas* relief and the record discloses no basis on which this Court could find equitable tolling is warranted. Therefore he fails to establish that an extraordinary circumstance impeded his ability to discover the evidence to support his claims or that he pursued his rights diligently. For this reason, Williams is not entitled to equitable tolling.

## C. *Actual innocence exception*

Finally, Williams claims that the limitations period should be tolled because he is actually innocent of the crimes for which he was convicted. In *McQuiggin v. Perkins*, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass... [to excuse] the expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). The Supreme Court has cautioned, however, that "tenable actual-innocence gateway pleas are rare[.]" *Id.* To succeed on this claim, Williams

---

[17] Rec. Doc. No. 1, Memorandum in Support, p. 10.

must present a credible claim of actual innocence based on "new reliable evidence... that was not presented at trial," and he "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of that new evidence of his factual innocence. *Schlup v.Delo*, 513 U.S. 298, 324, 327 (1995). Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *McQuiggin*, 133 S.Ct. at 1936.

Williams has not met the rigorous burden of proof imposed under the actual innocence exception based on the newly proffered evidence. The newly discovered evidence consists of numerous psychiatric evaluations by mental health professionals rendered during the victim's childhood years. Williams contends the evidence is so powerful that it would have "totally decimated the veracity, credibility and reliability of the victim's testimony."[18] Even if, as Williams claims, new evidence regarding the victim's mental health history could diminish the victim's credibility, the strength of the evidence presented here is not sufficient to undermine confidence in the outcome of trial. *McQuiggin*, 133 S.Ct. at 1936.

Williams argues that the newly discovered evidence of the victim's childhood psychiatric records shows that "the victim... [] was suffering from a variety of sexual related

---

[18] Rec. Doc. No. 1, Memorandum in support, p. 15.

11

psychological disorders and that the rape for which he accused Williams of committing, never occurred, but was an ideation resulting from a sexual gender disorder as well as other dementia afflicting [the victim's] mind since the tender age of eight (8) years old."[19]  He contends these records necessarily lead one to conclude the victim had a history of manipulation and falsifying rape attacks.  Simply stated, Williams' actual innocence argument appears to be that the alleged incident of sexual assault never happened, and that if he had the psychiatric records he could have shown that the victim's version of events was merely a delusion or fantasy.  The Court rejects his argument for the following reasons.

Even if the Court assumes that the evidence is "new" because it was not presented at trial, the evidence does not support a credible claim of actual innocence.  In this case, the newly discovered evidence is not sufficient to show that no reasonable juror would have convicted Williams for these crimes had the victim's psychiatric history been presented at trial.  First, a thorough review of the proffered evidence reveals that nothing objectively supports Williams' assertion that the victim had falsely reported rape attacks in the past.  Apart from the strong likelihood that any such evidence would be inadmissible at trial, no such evidence even exists in this case.[20]  Second, contrary to Williams' assertion that he was convicted solely and exclusively upon the victim's alleged unreliable testimony at trial, the record shows that

---

[19] *Id.* at 9.

[20] *See State v. Bryant*, 12-591 (La. App. 5th Cir. 2/21/13), 110 So.3d 1191, 1197-98; La. C.E. art. 412.

the victim's testimony regarding the occurrence of these crimes was consistent with the evidence presented at trial.

The record facts as succinctly summarized by the Louisiana Fourth Circuit on direct appeal established the following:

> B.M., 18 years of age, testified that on January 12, 1994, when he became a victim of the rape and crime against nature, he had been incarcerated for only ten days while serving a one year sentence for breaking into his girlfriend's house. This was his first incarceration and he was assigned to the prison medical unit.
>
> According to the victim, Gerald LeBoeuf enticed him to his cell where he saw Michael Williams and Louis Alexander. B.M. had noticed earlier that Williams and Alexander watched him as he showered. He further explained at length how he had been raped by LeBoeuf and had been forced to perform oral sex on Williams, LeBoeuf and Alexander.
>
> After the incident, the victim told another inmate, Mario Quijano, who had befriended him earlier, about the occurrence. B.M. then reported the defendants' actions to a deputy sheriff. Thereafter, he identified these defendants in a physical lineup. A medical examination established that semen was present on the victim and his anus was torn.[21]

In addition to the victim's testimony, the evidence at trial consisted of several witnesses, to whom the victim reported the rape. Furthermore, several witnesses testified at trial regarding objective physical evidence and findings that were consistent with the victim's testimony. The witnesses' testimony included that of senior night medical corpsman Michael Breslin, who stated he examined the victim and noticed a potential tear in his rectal area; emergency room

---

[21] *State v. Williams*, 96-KA-1144 (La. App. 4th Cir. Dec. 18, 1996) (unpublished); State Rec., Vol. 2 of 3.

13

physician Dr. Kevin Klauer, who testified that he examined the victim and noted three fresh and recent tears and general trauma to the periderm and genitalia which indicated force and that he detected the presence of seminal fluid on the victim under a fluorescent Wood's lamp; and finally, criminalist expert John Palm, Jr., who testified that the victim's clothing tested positive for seminal fluid.[22] Contrary to Williams' assertions, given the weight of the evidence presented at trial, the new evidence of the victim's childhood psychiatric evaluations does not establish that the offenses at issue were fabricated and thus that Williams was factually innocent.

Williams has not made the necessary showing by new evidence that he is actually innocent of the crimes of which he was convicted. *Schlup*, 513 U.S. at 316. Because Williams has not established that the actual innocence exception applies or that the limitations period was tolled, his petition should be dismissed as untimely.

## RECOMMENDATION

**IT IS RECOMMENDED** that Williams' application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error,

---

[22] State Rec., Vol. 2 of 3, Trial transcript, pp. 75-76, 98-105, 124.

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).[23]

New Orleans, Louisiana, this 26th day of June, 2015.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[23] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.